## ALBANY CITY NAT. BANK *v.* MAHER, Receiver, etc.

*(Circuit Court, N. D. New York.    March 27, 1881.)*

1. NATIONAL BANKS — TAXATION OF SHARES — ASSESSMENT — REV. ST. § 5219.

    The restriction upon the power of a state to tax the shares of any national bank within its borders "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," (Rev. St. § 5219,) is intended to secure equality of valuation in the assessment of the stock, as well as equality in the rate of the tax after the assessment has been made.

    *People* v. *Weaver,* 100 U. S. 539.

2. CORPORATIONS—TAXATION—SHAREHOLDERS.

    An act for the taxation of corporations generally does not exempt individuals from assessment or taxation upon their personal property or moneyed capital invested in the shares of such corporations.

3. NATIONAL BANKS—TAXATION OF SHARES—CAPITAL STOCK—REV. ST. § 5219.

    Therefore the imposition of a higher assessment and heavier tax upon the shares of a national bank than those imposed upon the capital stock and personal property of other corporations within the state does not contravene section 5219 of the Revised Statutes.

4. SAME—SAME—ASSESSMENT ROLL.

    In such case, however, the failure of the assessors to place the names of the shareholders upon the assessment roll, in accordance with the requirement of the state statute, renders such tax illegal and void, although a separate list, with the knowledge of the shareholders, was kept by such assessors showing the names of all such shareholders, with the number of shares held by each, and the assessable value of all such shares.

5. SAME—ILLEGAL TAX—INJUNCTION.

    The collection of such tax will not, however, be enjoined upon the application of a shareholder, upon the mere ground of such illegality.

6. SAME—SAME—SAME.

    In order to prevent a multiplicity of suits, however, the collection of such tax will be enjoined upon the application of the bank, where the latter is required by the statute under which the assessment was made to retain so much of any dividend or dividends belonging to such shareholders as shall be necessary to pay any taxes assessed in pursuance of the act.—[ED.

In Equity.

*A. J. Parker,* for plaintiff.

*R. W. Peckham,* for defendant.

v.6,no.5—27

WALLACE, D. J.  The complainant moves for an injunction to restrain the defendant from all proceedings to collect a tax assessed against various stockholders of the complainant by the board of assessors of the city of Albany.  The statute under which the assessment was made requires every bank-ing association to retain so much of any dividend or divi-dends, belonging to stockholders, as shall be necessary to pay any taxes assessed in pursuance of the act.  The complain-ant's bill alleges that its stockholders have been assessed, that none of them have paid the tax, and that several of them, owning together about half of the entire capital stock of the bank, have demanded their dividends and directed the complainant not to pay therefrom the taxes assessed, and refuse to allow the complainant to retain their dividends for that purpose.

The first ground upon which the right to an injunction is placed by the complainant is that the assessment contravenes section 5219, Revised Statutes of the United States, which prohibits the taxation of shares in national banks at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state.  The assessment was made under the provisions of chapter 596 of the Laws of New York of 1880, prescribing a system for the taxation of banks and moneyed capital invested in the business of bank-ing.  By another act of the same year (chapter 542, Laws 1880) all corporations except banks, life insurance compa-nies, and manufacturing companies are taxable upon their dividends, when the dividends declared during the year amount to 6 per centum or more; or when there are no dividends, or the dividends are less than 6 per centum, then the tax is to be assessed upon a valuation of their capital stock, made by the comptroller of the state in a mode pre-scribed by the act.  Section 8 of this act exempts the cap-ital stock and personal property of these corporations from other assessment or taxation.

It is claimed for the complainant that this latter act, respecting the taxation of corporations, subjects them to a moderate taxation, and exempts their stockholders from any

other taxation upon their stock and personal property in such corporations, while the act for the taxation of banks provides for a tax upon the shareholders, and an assessment on the value of the shares, and its operation is to impose a much heavier tax; and the bill alleges that the stockholders of the complainant are now taxed under that act at the rate of $3.60 on the par value of their shares, making the tax of all the stockholders of the bank the sum of $9,191; while under the general act the tax of all the stockholders would be but $450.

The national banking act permits the shares in any national bank to be included in the valuation of the personal property of the owner of such shares for the purposes of taxation under the laws of the state where the bank is located, but grants this right of taxation subject to the restriction that the taxation "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state;" and the true construction of this restriction is that it prohibits an assessment based upon a valuation which discriminates unfairly against bank shares, and is not merely intended to secure equality in the rate of the tax after the assessment has been made. *People* v. *Weaver*, 100 U. S. 539. If, therefore, the laws of this state prescribe one mode of assessment for the moneyed capital of individuals invested in ordinary corporations and joint-stock companies, and another for that invested in national banks, the practical result of which is to impose a higher assessment and heavier tax upon the latter, these laws are encountered by the restriction upon the taxing power of the state which the laws of the United States have prescribed. But I am of opinion that the complainant cannot prevail upon this theory, and that shareholders in national banks are not subjected to a discrimination or rule of assessment which does not obtain as to stockholders in other corporations, because the act for the taxation of corporations generally does not exempt individuals from assessment or taxation upon their personal property or moneyed capital invested in the shares of such corporations. This act exempts

only the capital stock and personal property of such corporations and joint-stock companies from assessment or taxation.

There is a wide difference, for the purposes of taxation, between the capital stock and personal property of a corporation, and the shares held by the several stockholders. Capital stock and shares therein are distinct species of property—as distinct as real estate and the mortgage by which it may be encumbered. The corporation and its capital and property are one thing; the stockholders and their property in its shares quite another. The corporation has the legal title and right of disposition of all the corporate property, subject to the conditions of its charter. The stockholders' right is to enjoy a proportionate part of the profits, or upon dissolution of the corporation a proportionate part of the assets after payment of debts. This is a distinct, independent interest or property held by the shareholder, like any other property that may belong to him. It is this interest which the national banking act has left subject to taxation by the states, while the states are denied the power to tax the capital stock of the banking association. It probably would not have been within the constitutional power of congress to permit the states to tax the capital stock of the banks. But no one doubts the authority of congress to permit the states to tax the shares of the stockholder. And because property of shareholders in shares, and the property of the corporation in its capital, are distinct property interests, both may be taxed. *Van Allen* v. *The Assessors*, 3 Wall. 573; *The Delaware R. R. Tax*, 18 Wall. 206; *Farrington* v. *Tennessee*, 95 U. S. 679. As both may be taxed, both may be exempted from taxation by legislative authority; but one is not exempted by the exemption of the other.

This construction of the exempting clause is consistent not only with the language used, but is consonant with the general scheme of the act as evinced by its several provisions. The first section, which prescribes the method by which the basis of the assessment shall be furnished by officers of corportions, enjoins the duty upon the officers of corporations

liable to be taxed upon their "capital stock." In the third section of the act, prescribing the rate of the tax, the tax is assessed upon the capital stock of the corporation. There is nothing in the act to indicate that any other subject of taxation than capital stock of corporations was within the contemplation of the legislature. The exemption must not be construed to extend to a different subject and to a distinct species of property. The complainant must, therefore, fail upon this branch of its case. It relies, however, on the additional ground that the assessment in question is void because the assessors have failed to comply with the requirements of the local statute regulating their proceedings. Act of March 23, 1850. This act makes it the duty of the board of assessors of the city of Albany, between the third Tuesday of April and first day of September in every year, to ascertain the names of all the taxable inhabitants in the several wards of the city, and also of all the taxable real and personal property within the same, and to prepare an assessment roll for each ward. This roll is to contain four columns, in the first of which the names of the taxable inhabitants are to be set down, and opposite each name in the second column a brief description of his taxable real estate; in the third column the value of such real estate, and in the fourth column the value of his personal property after deducting just debts, etc. The act also makes it the duty of the board of assessors to complete this roll on or before the first day of September in each year, and then forthwith to cause notices to be published in three of the public newspapers of the city for 20 days, specifying a day at the expiration of the 20 days when the assessors are to meet and remain in session five days for the purpose of reviewing their assessments on the application of any person aggrieved.

It is made to appear that none of the shareholders of the complainant who were assessed for personal property on account of their shares of stock in the complainant were named in the roll prepared by the assessors, except one who was assessed for $5,000 personal property, and another who was assessed upon real estate; but that a separate list was kept

by the assessors showing the names of all the stockholders of the complainant, (including the one assessed for $5,000,) the number of shares held by each stockholder, and the assessable value of his shares. This list was prepared for the use of the assessors by the officers of the complainant. It further appears that after the five days had expired for the review of assessments the roll was copied into a book, and the names of the shareholders of the complainant were transcribed from this list and inserted in the first column, with the assessable value of their shares opposite, in the fourth column. During the five days some of the shareholders of the complainant treated the list as an assessment, and had their assessments reduced by deductions on account of debts, etc., and among them was one of the officers of the complainant. It is fair to infer, from the facts stated in the defendant's affidavits, that the board of assessors regarded the list thus kept by them as part of the assessment roll, although it was not physically annexed to the roll, and supposed it was a substantial compliance with the law, and would afford to the shareholders of the complainant notice of an assessment, and an opportunity for review and correction. It is also fair to infer from the facts exhibited, and in the absence of any allegations to the contrary on the part of the complainant, that the officers of the complainant and its several shareholders understood that this list was kept by the assessors, and regarded by them as part of the assessment roll, for the purposes of an assessment against the shareholders. It was not a literal nor a substantial compliance with the statute. Undoubtedly those requirements in statutes regulating assessment and taxation, which are designed to afford tax payers an opportunity for the examination and revision of their assessments, should not be deemed directory merely, but essential. The tax payer is not to be condemned without a hearing, and the precautions prescribed to give him an effectual opportunity to be heard should receive strict construction in his favor. These are matters which are of the substance of the procedure. A substantial compliance with such statutes, in all matters which are designed for the pro-

tection of the tax payer and the preservation of his rights, is a condition precedent to the legality and validity of the tax. *Westfall* v. *Preston*, 49 N. Y. 349; *Clark* v. *Norton*, Id. 243.

Where, as was the case here, the formal roll which is presented for the inspection of the tax payers contains no evidence of an assessment against an individual, he has a right to assume that there is no assessment against him. Neither legal duty nor common sense requires him to institute further inquiries. He has a right to assume that the assessors have complied with the law, and that their roll is the complete exhibit of their official action. He is not to suppose that a separate list unknown to the law has been regarded by the assessors as constructively a part of the roll, when in fact it is not a constituent part of it. Practically, as well as theoretically, to permit such a list to be regarded as the assessment roll would be dangerous, and liable to mislead the tax payers and deprive them of the opportunity to obtain a revision of their assessments.

It will not do to say that it should be sufficient as to a particular tax payer when brought to his knowledge. As matter of law, either the list is part of the roll or it is not. If it is not, it cannot be made so by extrinsic circumstances.

I am therefore constrained to hold that the assessment against the shareholders of the complainant was not merely invalid for irregularity, but void, because the assessors failed to observe a condition precedent to their right to assess. And this conclusion must result in granting the injunction asked for. In order, however, that there may be no misapprehension as to the views which lead to this result, it is proper to say that the right of the complainant to the relief stands on a very different footing from that of the several stockholders who have been assessed. If these stockholders were complainants there would be two sufficient reasons for denying them the aid of a court of eqity and the preventive remedy of an injunction. Courts of equity are always reluctant to interfere with the collection of state taxes by the officers entrusted with that duty, and have almost uniformly

refused to do so when the case made rests solely on the illegality of the tax. As is ruled in *Dows* v. *City of Chicago*, 11 Wall. 108, "there must exist in addition special circumstances, bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury," etc., etc. Upon this consideration the stockholders would not be entitled to an injunction. But there is another ground upon which such relief would be refused them. In dealing with the rights of parties to resist taxation, courts of equity proceed upon considerations quite unknown to courts of law, and hold not only that it must appear the tax is one unlawfully imposed, but also one that justice and good conscience do not require the party to pay.

An illustration in point is found in *Mitchell* v. *Com'rs of Leavenworth*, 91 U. S. 206, where a complainant had converted his cash or deposit into United States notes before the day of listing taxes, in order to escape taxation, and being taxed, notwithstanding, the court held that although the tax was illegal, it would not, while sitting as a court of equity, use its extraordinary powers to assist him in a scheme to escape taxation, and dismissed the bill. In the present case I am unable to doubt that the stockholders understood that the assessors intended to assess their stock, and had made an informal assessment roll for that purpose. The statute required the complainant to deliver a list for the use of the assessors, and required the assessors to assess the shareholders in the ward where the bank was located; and it is not alleged in the bill or affidavits that a single stockholder was ignorant that he was assessed, or was in any way misled because the assessment was indicated upon a list and not upon the common roll. In short, it is not claimed that any shareholder was actually prejudiced by the failure of the assessors to conform to the strict requirements of the statute. Furthermore, it is stated in defendant's affidavits that the mode adopted by the assessors of keeping a separate list for the assessment of bank shareholders was publicly known,

and was the same which had been followed by the assessors for the city of Albany for many years, and was followed generally by assessors throughout the state.

Such being the facts, it must be assumed that the stockholders of the complainant preferred, instead of contesting the justice or equity of the assessment by seeking to have it reviewed and corrected, to rely upon their strict legal rights. I do not mean to impugn the personal good faith of the stockholders. Doubtless they believed that the law under which the assessment was made was in conflict with the act of congress, and that any assessment would be void for the reasons urged as the first ground for an injunction. But, as has been shown, that ground was not tenable, and if the stockholders were now seeking aid in equity because the assessors failed to give them the notice of the assesssment required by law, they would be defeated upon the ground that as they were not in fact misled, and not unjustly assessed, they should be held to their strict legal rights, and not entitled to the intervention of a court of equity. They would, therefore, be relegated to their remedy at law.

But the rights of the complainant rest upon another footing. It is required, as has been stated, to withhold dividends from its shareholders to such extent as may be necessary to pay any taxes assessed against them. Some of its shareholders appeared before the board of assessors and were relieved from assessment. Many other shareholders did not attempt to be relieved, but now fall back upon their right to insist that the tax is illegal, and refuse to permit the complainant to retain their dividends. The complainant is thus exposed to a multiplicity of suits by these stockholders. If it pays over the dividends, the shares of many of its stockholders may be seized and exposed to sale. If the complainant transfers the stock to purchasers, it does so at the peril of maintaining the legality of the sale. On the other hand, if it refuses to pay the dividends to the shareholders, and resists their suits, the burden and expense of the litigation will fall upon those stockholders who have been relieved of their assessments as well as upon the others. The case, therefore,

is one where the court must intervene to prevent a multiplicity of suits. *Cummings* v. *Nat. Bank*, 101 U. S. 157; *Nat. Albany Ex. Bank* v. *Hills*, 5 FED. REP. 248.

The defendant insists that the complainant should resort to a *certiorari* for redress, under chapter 269 of the Laws of New York of 1880. If the assessment here were one against the bank, that act would afford a convenient remedy, and it might be urged that the complainant has an adequate remedy at law. But as the assessment is not against the bank, I cannot see how the act applies to the present case.

An injunction is granted.