WILLIAM B. MILLER, APPELLANT, V. CITY OF LINCOLN, APPELLEE.

FILED OCTOBER 31, 1913.  No. 17,377.

1. **Municipal Corporations: ORDINANCES: PASSAGE.** Under the provisions of the statute governing the city of Lincoln, when an ordinance has been read on three different days, and is then substantially amended, it is irregular to immediately pass the amended ordinance without further reading, unless such reading has first been formally dispensed with by a two-thirds vote of all members of the council. But if more than two-thirds of the members elected are present and vote for the amendment and for the passage of the ordinance as amended, the statute is substantially complied with in that respect.

2. ———: ANNEXING LAND. The statute governing the city of Lincoln provides that "territory contiguous or adjacent (to the city) which has been by act or acquiescence of the owner subdivided into tracts of not over 20 acres" may by ordinance be included in the city. Under the conditions stated in the opinion, it is *held* that the council had power by ordinance to include plaintiff's land in the city.

40

3. Taxation: Assessment: Validity. Plaintiff being the owner of land known as "irregular tract 29," which was crossed by a boulevard of the city, sold and conveyed to the city that part thereof lying on one side of the boulevard. The part sold to the city was thereupon designated as "lot 78" and plaintiff's tract as "lot 77." Taxes were afterwards assessed against both tracts, jointly described in the assessment as "lot 29." The evidence is not definite and exact as to the acreage of either tract, nor as to the relative value thereof. *Held,* That, as·it is impossible to ascertain the equitable proportion of the tax chargeable against plaintiff's tract, the assessment is void, and the plaintiff was not required to tender any portion of the tax before bringing his action to cancel the same.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed with directions.*

*George W. Berge* and *C. J. Campbell,* for appellant.

*Fred C. Foster, D. H. McClenahan* and *Charles R. Wilke,* contra.

SEDGWICK, J.

The plaintiff brought this action in the district court for Lancaster county to enjoin the collection of real estate taxes levied by the city of Lincoln and to cancel the same. The plaintiff was the owner of a tract of land lying just outside the limits of the city of Lincoln, known as "irregular tract 29," and sold between two and three acres to the city, which was afterwards known as "irregular tract 78." He retained the remainder of 29, about 7 or 8 acres, afterwards known as "irregular tract 77." The boulevard, which is maintained jointly by the city and by Lancaster county, lies between 77 and 78. The district court found the issues in favor of the city, and the plaintiff has appealed.

1. The first contention is that the ordinance of the city incorporating lot 29 within the city is void, and therefore the plaintiff's lot is not within the city and the city is without authority to levy taxes thereon. On January 29, 1906, an ordinance, No. 359, was introduced in the coun-

cil, which was a general ordinance extending the limits of the city and including lot 29. Afterwards an amended ordinance was introduced, defining the limits of the city and substituted for No. 359. It also included lot 29, and was read on three different days, and was then amended, but no change was made directly affecting lot 29. It was then passed as amended without any further reading, and plaintiff contends that it was not "fully and distinctly read on three different days," as the statute and general ordinances of the city require, and was therefore void. The record shows that all councilmen were present except one, and that all present voted for the amendment of the ordinance, and also for its final passage as amended. Both the statute and the ordinance provided that the rule requiring reading of the ordinance on three different days shall be enforced, "unless the council shall dispense with this rule by a two-thirds vote of the members elected." Comp. St. 1905, ch. 13, art. I, sec. 73. No formal vote was taken dispensing with the rule, but more than two-thirds of all members elected voted for the passage of the ordinance. Cases are cited from the courts of New Jersey, and perhaps other courts, holding that there must be a formal vote dispensing with the rule, but this is altogether too technical for this court to overthrow the will of the council plainly expressed. The precise point has been heretofore expressly determined by this court in *Nelson v. City of South Omaha,* 84 Neb. 434. In that case the court said: "It appears to us that the passage of a formal motion to suspend the rules by two-thirds of the members of the council would have been an idle formality. Two-thirds of the council could have carried such a motion, and then a majority vote could have ordered the second reading by title."

2. The second contention is that the plaintiff's land is not "suitable for city purposes," and could not under the law be included in the corporate limits of the city. There is in the record an exhibit showing a portion of the east part of the city and some adjacent territory. This ex-

Miller v. City of Lincoln.

hibit is not entirely self-explanatory, and we have not been referred to evidence in the record that fully and satisfactorily explains the relation of the surrounding tracts to the city. It appears, however, that lot 29 was in the form of a square, and that Normal boulevard, above mentioned, runs diagonally through this tract. That part of the tract sold to the city lies on the south and west of the boulevard and is incorporated into the city park, so that the plaintiff's lot 77 adjoins the boulevard. On the same side of the boulevard there are several tracts of land that have been platted into lots and streets, and some of these lots are occupied by residences. There is a sewer and water-main maintained by the city through the park, both crossing the plaintiff's land. The city maintains electric lights within 400 or 500 feet of the land, and some of the platted additions on that side of the street are incorporated in the city. The statute provides (Comp. St. 1905, ch. 13, art. I; sec. 4) that "territory contiguous or adjacent (to the city) which has been by act or acquiescence of the owner subdivided into tracts of not over 20 acres" may by ordinance be included in the city. It seems clear that such tracts of land, situated with reference to the city and its advantages as this tract is, and lying adjacent to one of the principal boulevards of the city, are within the province of this statute.

3. The final contention is that the taxes in question were illegally assessed. It appears from the record that, although the city became the owner of that part of lot 29, afterwards known as lot 78, in 1906, taxes for that year and subsequent years, including the year 1908, were assessed against lot 29, although that description in 1906 had been abandoned.

The defendant invokes the principle that "he who seeks equity must do equity," and contends that the plaintiff should be required to pay that portion of the taxes for the years 1907 and 1908 which are equitably chargeable against his lot. The case of *Challiss v. Hekelnkœmper,* 14 Kan. 474, is cited as authority for this proposition. **In**

that case "the value of the adjacent lot was three times that of the one in controversy," and the court said: "Clearly, therefore, as taxes are based upon value, the lot in controversy should have paid one-fourth and only one-fourth of the joint tax." If that case should be followed as authority in this state, it does not control in the case at bar. We cannot find in this record a clear basis upon which to compute the portion of tax properly assessable to lot 78 and the portion assessable to lot 77, the lot in controversy. The brief for defendant states the assessed value of lot 29 for the years 1907 and 1908, and the amount of land embraced in each of lots 77 and 78, and concludes that the tax properly chargeable against each lot, respectively, would be in direct proportion to the acreage of each. But no reference is made to any evidence in the record which would establish that lot 78 within the city park is of the same value, acre for acre, as lot 77 on the opposite side of the street. On the other hand, we have observed evidence tending to show that there is such difference in the character and condition of the two lots as to render it probable that lot 78 includes more valuable land than the average of the land in lot 77. The evidence as to the amount of land in each tract, so far as it has been brought to our attention, is not definite and exact. The trial court found that "the evidence is not sufficient to determine the exact amount that should be remitted from said taxes." So far as we are advised, this finding is supported by the record. The trial court, however, concluded that, "it appearing to the court that no tender has been made by the plaintiff and no offer by plaintiff to do equity by paying whatever amount should be justly due, no equitable relief can be allowed plaintiff in the premises as to those taxes for 1907 and 1908." In this conclusion we think the court was in error. If there was no basis upon which to determine what "amount should be justly due," no such tender could logically be made. If the plaintiff's pleading and evidence established that an assessment of taxes had been made upon his prop-

erty jointly with property of the city, and it was impossible to ascertain how much of that assessment should be charged against his property, it would be idle to offer to pay such a portion of the tax as should be so charged. The trial court included in its findings the statement that "the mutilation of the tax records is disapproved of; the cancelation of a tax should be done without erasure or mutilation of the record, and should affirmatively appear on the record, so that the history of the tax will not become confused or hidden." This criticism is just, and it must be conceded by all that the loss of this revenue to the city is the fault of its officers, and not of this plaintiff. The tax assessed for 1906 was afterwards canceled by the city authorities. The taxes assessed for the years 1907 and 1908 should be canceled also.

The judgment of the district court is reversed and the cause remanded, with instructions to perpetually enjoin collection of the taxes upon the assessment complained of against lot 29 for the years 1907 and 1908, so far as the same affect lot 77.

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.