# Richmond.

## CHARLES BROPHY v. COMMONWEALTH.

November 16, 1922.

1. TAXATION—*Due Process of Law—General Rule.*—The exercise of the power of taxation is a taking of a person's property by the State and falls within the purview of the fourteenth amendment to the Federal Constitution, providing that "no State shall deprive any person of life, liberty, or property without due process of law."

2. TAXATION—*Due Process of Law—What Constitutes.*—With respect to taxation it is settled that "due process of law" demands: (1) That the property to be taxed be properly and accurately listed for taxation in books kept for the purpose open to the public, in such manner as to inform persons interested of the property to be taxed, its owner, and the amount of the tax; (2) that the property be valued; (3) that upon such valuation the tax shall be levied or extended in the proportion designated by the tax law. These are the fundamental and jurisdictional steps in due process of law as applied to taxation, and no State law can dispense with them.

3. APPEAL AND ERROR—*Evidence Not Certified—Facts Certified—Taxation—Presumption in Favor of Assessment.*—On appeal from a decree fixing the delinquent taxes on a certain tract of land, in a proceeding by petition under section 2456 of the Code of 1919 for the ascertainment of such delinquent taxes, the petitioner contended that the assessment upon which the taxes in question were based was absolutely invalid. None of the evidence before the court below was certified. The certificate showed only certain facts proved.

   *Held:* That it must be presumed that the assessment in question was made in accordance with the requirements of the statute law on the subject in all particulars not negatived by the facts certified.

4. TAXATION—*Proceeding to Ascertain Delinquent Taxes Under Section 2456 of the Code of 1919—Invalid Assessment—Burden of Proof.*—In a proceeding by petition to ascertain delinquent taxes due upon real estate, where the petitioner contends that the assessment was invalid, the burden of proof is upon the petitioner, both in the trial court and on appeal, to show affirmatively such noncompliance with the statutory requirements as invalidates the assessment.

5. TAXATION—*Assessment—Quantity of Land—Vendor and Purchaser—Whole Tract Assessed to Vendee—Case at Bar.*—In the instant case, a

proceeding by petition under section 2456 of the Code of 1919, to ascertain the delinquent taxes due upon a tract of land, it appeared that the vendee of 333¼ acres of a boundary of 527 acres of land was assessed with the quantity of 527 acres, but the amount of tax returned delinquent was only the tax on the value of 333¼ acres purchased by this vendee, and was the correct amount of the tax on that parcel. Therefore, the description of the tract of 333¼ acres was in all respects fully and accurately identified by the description of it on the land books and in the delinquent tax list, except that the number of acres therein was erroneously stated as 527 instead of 333¼.

*Held:* That this was merely an error in stating the acreage of the land assessed, and did not affect even the amount of the tax, much less make the assessment void.

6. TAXATION—*Assessment—Incorrect Statement of Acreage.*—An assessment of land which states the name of the owner correctly, describes the land as required by the statute in all respects, save the correct acreage, values the land correctly, and extends the tax upon that valuation, is not a void, but merely an erroneous, assessment.

7. TAXATION—*Assessment—Description of Land—Error in Acreage—Case at Bar.*—The original entry of the assessment on a tract of land of 333¼ acres, which formerly constituted part of a larger boundary of 527 acres, for the years 1906 and 1907, and the delinquent lists for those years, described the 333¼ acre parcel of land assessed with sufficient accuracy and particularity to render it readily capable of identification by the owner. The amount of the tax extended against the owner did not embrace any of the tax on the residue of the 527 acre boundary not owned by such owner, and was only the correct amount of the tax properly assessable against the 333¼ acre parcel. Thus was given, to the owner and to all later owners of the 333¼ acre parcel, notice of the exact and correct amount of the taxes assessed against such parcel, for which the Commonwealth held a lien upon such land. Hence the assessment was not invalid because of insufficiency of its description of the property or of the designation of the amount of the tax thereon.

8. TAXATION—*Assessment—Vendor and Purchaser—Whole Tract Assessed Against Purchaser—Case at Bar.*—Where a tract of land belongs to two or more persons, the assessment of the whole tract and an extension of the tax on the whole to one of the persons is an illegal and void assessment, but this rule has no application to the instant case. Where though a whole boundary was assessed to the purchaser of a part thereof the tax extended against the purchaser was only for the part purchased by him.

9. TAXATION—*Delinquent Taxes—Proceeding to Ascertain Under Section 2456 of the Code of 1919—Petitioner Submits to Jurisdiction of Court to Fix the Taxes Due, Although they may not have been Legally Assessed.*—Section 2456 of the Code of 1919 providing that any person interested

in real estate may file a petition to ascertain delinquent taxes due thereon gives the court in which such petition is filed jurisdiction to enter an order fixing the taxes due, although they may not have been theretofore legally assessed. The statute, in substance, provides the method for the assessment by the court of the taxes which are "due," but which may have not been theretofore properly assessed; and the applicant for relief under such statute subjects himself to the jurisdiction of the court to require him to pay the taxes found by the court to be so "due" as the condition upon which he is allowed to thereafter hold the land free and clear of any tax lien therefor.

Error to an order of the Circuit Court of Nelson county, in a proceeding by petition to ascertain the taxes due on certain real estate. To the order determining the taxes due, the petitioner assigns error.

*Affirmed.*

The plaintiff in error, Brophy, filed his petition in the court below under section 2456 of the Code of 1919. The petition, so far as material, is as follows:

"Your petitioner, Chas. Brophy, respectfully shows that he is the owner of a tract of land in Nelson county, Lovingston district, containing by survey 333¼ acres, which said tract was conveyed to petitioner by deed of July 16, 1914, from G. E. Caskie, etc., trustees, and of record in the clerk's office of your honor's court in Deed Book 40, page 205, and which said deed described the land as 'supposed' to contain 350 acres.

"That the said land is a part of a larger tract formerly conveyed to the Orange, Alexandria and Manassas Railroad Company by Miles I. Shipman and wife, by deed dated July 4, 1872, and of record in said clerk's office in Deed Book 18, page 277, which said deed described the larger tract as containing 578 acres. Subsequent deeds conveying the land and setting out the acreage are as follows: Eppa Hunton, comr., to S. A. Shipman, October 13, 1891, Deed Book 25, page 437, conveying 527

acres; S. A. Shipman to Jas. B. Gordon, March 6, 1905, Deed Book 31, page 349, conveying 527 acres; Jas. B. Gordon and wife, to the Plumbers Soapstone Company of America, Inc., August 17, 1905, Deed Book 32, page 46, conveying so much of the tract of 527 acres, more or less, 'as lies east of the road from Fairmont Church to Variety Mills and estimated as being the larger part of the same.'

"The part thus conveyed to the Plumbers Company subsequently came down to your petitioner.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Petitioner would further show that, though the deed to the Plumbers Soapstone Company conveyed only so much of the larger tract as was east of the road from Fairmont Church to Variety Mills, supposed to be the larger part of the whole tract, yet the commissioners in transferring the tract *to* the said Plumbers Company assessed the whole tract of 527 acres in the name of the said company and it continued so assessed for the years 1906 and 1907, and was returned delinquent for said years in said name. The delinquent books for each of said years have an endorsement to the effect that 'J. B. Gordon paid his part,' but leaving a balance due on State and county taxes of $79.72 for 1906 and $194.90 for 1907.

"Petitioner is advised and insists that the said assessment for the years 1906 and 1907 were invalid and void, and the tax thereon based of no effect to bind the land now owned by petitioner who purchased his land in ignorance of said taxes.

"Petitioner prays that he be allowed to file this, his petition, pursuant to section 2456 of the Virginia Code of 1919, and that the court will, pursuant thereto, ascertain and fix what, if any, delinquent taxes are *legally due* on the said real estate owned by petitioner, includ-

ing the amount, if anything, to be paid upon any sale or sales of said real estate to the Commonwealth for taxes, and that upon payment of any such amounts so found to be due, that petitioner may hold his said land free and clear of any such tax lien."

Subsequently the court entered the decree under review, which, so far as material, is as follows:

"This day came the parties, by counsel, and the court having duly considered the petition of Charles Brophy for the ascertainment of delinquent taxes on a tract of land in Lovingston district, Nelson county, Virginia, and it appearing that the Commonwealth's attorney has had due notice of said motion, the said motion being defended by the Commonwealth's attorney, and the court doth certify the facts proved as follows:

"That the said Charles Brophy is the owner of a tract of land containing by survey 333¼ acres, which is a portion of a larger tract of 527 acres, owned by the Orange, Alexandria and Manassas Railroad Company, having been conveyed to it by deed of July 4, 1872, from Miles I. Shipman and wife, recorded in the clerk's office of Nelson county in Deed Book No. 18, page 277; that the said land came by subsequent conveyances to James B. Gordon, who, by deed of August 17, 1905, and recorded in the said clerk's office in Deed Book 32, page 46, conveyed a part of same to the Plumbers Soapstone Company of America, Inc., said portion so conveyed being described as so much of the tract of 527 acres, more or less, 'as lies east of the road from Fairmont Church to Variety Mills, and estimated as being the larger part,' that subsequently, the portion conveyed to the said Plumbers Soapstone Company of America, by sundry conveyances vested in the said Charles Brophy, and contains by survey 333¼ acres; * * * that after the conveyance to the Plumbers

Soapstone Company of so much of the larger tract as lay on the east side of the aforesaid road, and supposed to be the larger part of the tract, the whole tract of 527 acres was transferred by the commissioner on the land books to the Plumbers Soapstone Company for the year 1906, and the said whole tract continued assessed in the name of the Plumbers Soapstone Company for the years 1906 and 1907 and returned delinquent for the year 1906 *for the balance due on said taxes,* and sold to the Commonwealth on the 5th day of January, 1908, the amount of the sale being $79.72. Said property was likewise returned delinquent for the year 1907, the amount being $194.90, and the total amount of taxes, including interest to January 1, 1922, redemtion fee of fifty cents and amount due the treasurer for advertisement, sixty cents, is  *  *." (As stated below). "That it further appears that J. B. Gordon paid his part of the taxes for the years 1906 and 1907, respectively, and that the above amounts were for the balance due on the tract of 527 acres, together with the improvements thereon.

\*     \*     \*     \* ,     \*     \*     \*     \*     \*     \*     \*

"\*   \*   \*   the court doth thus fix the proper amount of delinquent taxes due on said 333¼ acres, owned by the said Charles Brophy, as follows:

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"For the year 1906:

"Amount of sale to Commonwealth_____$ 79 72
"Interest from January 1, 1908, to January
    1, 1922_____ 66 96
"For the year 1907:
"Amount of tax_____ 194 90
"Interest from December 15, 1907, to January 1, 1922_____ 164 21
"Redemption fee_____ 50
"Treasurer for advertisement_____ 60

*    *    *    *    *    *    *    *    *    *    *

"And the court doth order that upon payment by the said Charles Brophy of the amount above set out, with interest on the principal sums, * .* * and costs of this proceeding, that the said land held by the said Charles Brophy shall be held free of any delinquent taxes on the said 333¼ acres, on account of the taxes aforesaid.

"And the court. doth further certify that the attorney for Charles Brophy excepted to the action of the court in holding that the taxes returned delinquent for the years 1906 and 1907, or any part thereof, were properly held to be a lien on the land owned by the said Charles Brophy."

Section 2456, so far as material, is as follows:

"*Any person interested in real estate may file a petition to ascertain taxes due thereon.*—Any person interested in real estate may file a petition in the circuit * * * court of the county * * * wherein the assessment of taxes was made, for the purpose of having ascertained any and all delinquent taxes due upon such real estate, including the amount necessary to be paid to the Commonwealth of Virginia, upon a sale of such real estate to the Commonwealth for taxes, and a copy of the petition shall be served upon the attorney for the Commonwealth five days before the date upon which the petition specifies the court shall be asked to hear the petition. * * The court shall enter final judgment determining *what*, if any, *taxes are due upon the real estate mentioned in the petition* and thereafter, *upon the payment of any amount so ascertained by the court,* and the costs of the proceeding, the said land shall be held free and clear of any such tax lien. * * *." (Italics supplied).

The statute law on the subjects of the assessment of

lands for taxes and of the delinquent lists and sale of land for delinquent taxes, in force when the taxes for 1906 and 1907, mentioned in the said petition, were assessed, appears in Pollard's Code of Virginia 1904, in sections 459, 470, 465, 467, 471, 605, 606, 636, 608, 611, 637, 638, 662, 664 and 666.

Section 459 provides for annual lists to be made by the clerk and furnished to the commissioner of the revenue, on or before the 15th of January, of all deeds of conveyance of real estate recorded in the clerk's office prior to the end of the preceding year; which list shall state "the date of the deed, when admitted to record, the names of the grantors and grantees, the quantity of land conveyed, the specified value thereof, and a description of the same."

Section 470 provides that the lands appearing on the aforesaid clerk's lists "shall be transferred accordingly on the land book and charged to the person to whom the transfer is made   *   *."

Section 465, so far as material, provides as follows:

"In the table of tracts of land the commissioner shall enter each tract separately and set forth in as many columns as may be necessary the name of the person who by himself or his tenant has the freehold in possession   *   *   *   the number of acres in the tract, the name of the tract, if it has a name, and a description of it with reference to contiguous tracts or to water courses, mountains and other places on or near which it lies; the distance and bearing from the court house; the value of the land per acre, including the buildings; the value of the land and buildings; the sum included in the value on account of buildings; the amount of tax on the whole tract at the legal rate, and from whom, when and how the owner derived the land when this is known, with a note and explanation of any alteration

17  ·

made showing why and upon what authority it was made.   *   *."

Section 467 provides as follows:

"Such changes as may happen within the county, *   *   * of any commissioner, shall be noted by him in his land book   *   *."

Section 471 provides as follows:

. "When a tract or lot becomes the property of different owners in several parcels, the value at which the whole has been assessed shall be divided by the commissioner among the several parcels, having regard to the value of each parcel compared with that of the whole tract or lot, and the tax upon the whole shall be apportioned accordingly among the owners of the different parcels.   If any person interested shall be dissatisfied with such apportionment, he may apply to the commissioner to make a reassessment and the commissioner shall make the same according to the best of his skill and judgment   *   *   *."

Section 605 provides that the treasurer "after ascertaining which of the taxes and levies assessed in his county   *   * cannot be collected, shall, not later than the first day of July in each year, make out   *   * a list of   *   * real estate which is delinquent for the non-payment of taxes and levies thereon;   *   *."

Section 606 provides that "The lists mentioned in the preceding section shall be in such form as the Auditor of Public Accounts directs;   *   *."

Section 636 provides that there "shall be a list upon all real estate for the taxes and levies assessed against it."   .

Sections 608, 611, 637, 638, 662, 664 and 666 provide how the list of lands delinquent for the nonpayment of taxes is made a record in the clerk's office, and also that the land may be redeemed within a certain time

before sale by payment of the taxes for which it is returned delinquent; for sale by the treasurer for such taxes if not so paid; for the purchase of the land by the Commonwealth for the delinquent taxes; and for the right of redemption thereafter by the owner by payment of the delinquent taxes, etc., etc., before and within a certain time after the land has been sold to some one by the Commonwealth.

*Caskie & Caskie*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General, J. Vaughan Gary* and *E. Warren Wall*, for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The first question presented by the assignments of error is this:

1. Was the assessment of the Plumbers Soapstone Company with the taxes for the years 1906 and 1907, which the order of court under review adjudged to be a lien on the parcel of 333¼ acres of land conveyed to that company in 1905 by the former owner of the larger tract of 527 acres, of which the 333¼ acre parcel was a part, not merely an erroneous, but an absolutely invalid assessment, because of its failure to comply with the requirements of the statute law on the subject?

The question must be answered in the negative.

A number of authorities are cited for the plaintiff in error, namely, 27 Am. & Eng. Enc'y of Law (2nd ed.) 660, 762, 683, 686; *Mosser* v. *Moore*, 56 W. Va. 478, 49 S. E. 537; 26 R. C. L. p. 357, to the effect that a valid assessment is indispensable to the proper levying of a

tax; that it is essential to the validity of an assessment of real estate that it contains a description of the property "sufficiently accurate and certain to enable the owner readily to identify it as his and to furnish a basis for the tax lien and for proceeding *in rem* against the tract should such become necessary for the collection of the tax;" that, "when the revenue statutes direct each tract of real estate to be separately listed and valued," as do such statutes in Virginia, "as a rule this requirement is held to be mandatory and compliance therewith is essential to the validity of the assessment;" and that if the property is not described in the tax list with sufficient accuracy and particularity to render it capable of ready identification by the owner, the defective description cannot be supported by extrinsic evidence and the fact that the owner was not actually misled does not validate the assessment.

And Minor on Real Property, section 1138, is also cited, dealing with the subject of the validity or invalidity of sales of land for delinquent taxes, where, among other things, this is said:

[1, 2] "The exercise of the power of taxation is a taking of a person's property by the State and falls within the purview of the fourteenth amendment to the Federal Constitution, providing that 'no State shall deprive any person of life, liberty or *property* without *due* process of *law.*'

\*        \*        \*        \*

"With respect to taxation it is settled that 'due process of law' demands (1) That the property to be taxed be properly and accurately *listed* for taxation in books kept for the purpose open to the public, in such manner as to inform persons interested of the property to be taxed, its owner, and the amount of the tax; (2) that the property be valued    \*    \*    \*;  (3) that upon such

valuation the tax shall be levied or extended in the proportion designated by the tax law.

"These are the fundamental and jurisdictional steps in 'due process of law' as applied to taxation, and no State law can dispense with any of them without violating the Federal Constitution, though the manner of performing them is in the discretion of the legislature."

The foregoing statements of the law are undoubtedly correct. It is plain, however, that the record does not present a case of an assessment which falls within the condemnation of the aforesaid authorities.

[3-5] None of the evidence before the court below is certified. The certificate shows only certain facts proved. We must presume that the assessment in question was made in accordance with the requirements of the statute law on the subject in all particulars not negatived by the facts certified. The burden was upon the petitioner in the court below, and no less so here, to show affirmatively such noncompliance with the statutory requirements as invalidates the assessment.

[6] It appears from the record that although the, at that time, owner of the 333¼ acre parcel of land, the Plumbers Soapstone Company, was assessed for the years 1906 and 1907, and with the quantity of 527 acres of land, the amount of the tax returned delinquent thereon for those years, respectively, was only "the balance due" by such then owner, which, as evidenced by the respective amounts of the tax extended for those years, is shown to have been only the tax on the value of the 333¼ acre parcel of land—and also to have been the correct amount of that tax, as the court below found, as is shown by the judgment under review. Since, under the provisions of the statute law on the subject, the delinquent list, in respect to the matters

shown by it, follows the list made by the commissioner of revenue, where, as in the instant case, a tract formerly owned by one person has had a portion of it conveyed by him to another, we can draw no other conclusion from the meagre facts proved by the plaintiff in error, as certified in the record before us, than that the Plumbers Soapstone Company was assessed in 1906 and 1907 merely with the value of the parcel of 333¼ acres which was conveyed to that company, as such value was fixed by the commissioner of revenue as required by section 471 referred to in the statement preceding this opinion; that the amount of the tax for 1906 and 1907, respectively, extended by the commissioner of revenue upon this land was not the tax on the value of the whole 527 acres, but the tax on the 333¼ acres only; and that the 333¼ acre parcel of land was in all respects fully and accurately identified by the description of it on the land books and in the delinquent tax list, as required by law, except in the single particular that the number of acres therein was erroneously stated as 527 instead of 333¼.   This was merely an error in stating the acreage of the land assessed, which did not affect even the amount of the tax, much less make the assessment void.   It seems plain that an assessment of land which states the name of the owner correctly, describes the land as required by the statute in all respects, save the correct acreage, values the land correctly and extends the tax upon that valuation, is not a void, but merely an erroneous assessment.

[7] The original entry of the assessment for the years 1906 and 1907, and the delinquent lists for those years, all open to public inspection and matters of record in the clerk's office, described the 333¼ acre parcel of land assessed with sufficient accuracy and particularity

to render it readily capable of identification by the owner; the amount of the tax extended against the owner did not embrace any of the tax on the residue of the 527 acre tract not owned by such owner, and was only the correct amount of the tax properly assessable against the 333¼ acre parcel of land, as the court below found, as aforesaid.   Thus was given, first to the Plumbers Soapstone Company, and subsequently to all later owners of the 333¼ acre parcel of land, down to and including the plaintiff in error, notice of the parcel of land assessed and the correct amount of the taxes assessed against it, and for which the Commonwealth, before and after it was returned delinquent, held a lien upon, such land; and the payment by any of such owners, at any time, of the amounts as assessed against such parcel of land, and for which it was returned delinquent, would not have required the payment of any tax on the residue of the original tract of 527 acres.

Hence the assessment was not invalid because of insufficiency of its description of the property or of the designation of the amount of the tax thereon.

[8] A number of authorities are cited for the plaintiff in error to the effect that where a tract or lot of land belongs to two or more persons the assessment of the whole tract and the extension of the tax on the whole to one of the persons is an illegal and void assessment. The authorities cited which so hold are 26 R. C. L., p. 360; *Miller* v. *City of Lincoln*, 94 Neb. 577, 143 N. W. 921; *State Finance Co.* v. *Myers*, 16 N. D. 193, 112 N. W. 76, 78; *State Finance Co.* v. *Beck*, 15 N. D. 374, 109 N. W. 357, 358; *Johnson County* v. *Tierney*, 56 Neb. 514, 76 N. W. 1090, 1093; *Bradford* v. *Durham*, 54 Or. 1, 101 Pac. 897, 135 Am. St. Rep. 807; *Jennings* v. *Collins*, 99 Mass. 29, 96 Am. Dec. 687; *Neu* v. *Voege*, 96 Wis. 489, 71 N. W. 880; *Frazier* v. *Prince*, 8 Okl. 253,

58 Pac. 751; *Roberts* v. *First Nat. Bank,* 8 N. D. 504, 79 N. W. 1049; *Lancy* v. *Boston,* 186 Mass. 128, 71 N. E. 302; *McKeown* v. *Collins,* 38 Fla. 276, 21 So. 103. But these authorities so hold on the ground, which is expressed in the case of *Johnson County* v. *Tierney,* as follows: "Where the land owned by one person is assessed with the land of another, *under one aggregate valuation,* so that neither can determine the amount of the tax for which his property is liable, the uniform holding of the courts is that the entire tax is void." (Italics supplied.)   It is manifest from what we have said above that these authorities have no application to the instant case.

[9] 2. But if we should be in error in the conclusion reached above from the meagre record before us of the facts of the case, and if it were true that the assessments and delinquent lists for 1906 and 1907 did not extend the tax for the definite amounts of $79.72 and $194.90 for those years respectively, but for some larger amount (which is not stated in the certificate of facts before us), on the valuation of the whole 527 acres (which fact also is not stated in the certificate of facts before us); still, the said $79.72 and $194.90 were unquestionably the taxes for the years mentioned "due upon the real estate mentioned in the petition;" and section 2456 of the Code, under which the petition in this case was filed, gave the court jurisdiction to enter the order it did as to the taxes so "due," although they may not have been theretofore legally assessed. The statute, in substance, provides the method for the assessment by the court of the taxes which are "due," but which may have not been theretofore properly assessed; and the applicant for relief under such statute subjects himself to the jurisdiction of the court to require him to pay the taxes found by the court to be so "due"

as the condition upon which he is allowed to thereafter hold the land free and clear of any tax lien therefor.

The order under review will be affirmed.

*Affirmed.*