IDAHO RY., LIGHT & POWER CO. et al. v. MONK, County Treasurer, et al.

(District Court, D. Idaho, S. D. June 18, 1914.)

1. TAXATION (§ 318*)—ASSESSMENT—TIME FOR ASSESSMENT—STATUTORY PROVISIONS.

Laws Idaho 1913, p. 201, § 92, providing that the state board of equalization must assess all property to be assessed by it at its meeting convening on the second Monday of August, and must complete the assessment on the fourth Monday of August, is for the benefit of the public, and not for the protection of the taxpayer, and is directory only; and hence, where the board, while still in regular session, adopted a tentative valuation of a hydro-electric power plant, and referred such valuation to the state tax commission for investigation, report, and recommendation, an assessment made December 4th, after receiving such report, materially increasing the tentative valuation, was not void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 530, 531; Dec. Dig. § 318.*]

2. TAXATION (§ 363*)—ASSESSMENT—RIGHT OF TAXPAYER TO HEARING.

Under Laws Idaho 1913, p. 202, § 95, providing that every person whose property is to be assessed by the state board of equalization shall, upon request therefor in writing, be entitled to a hearing before the board in relation to his assessment, where a taxpayer appeared at the board's regular session in August, presented data, and made an argument with reference to the valuation to be placed upon its property, and the board adopted a tentative valuation of such property, which it referred to the state tax commission for investigation, report, and recommendation, and after receiving such report met, pursuant to the call of the chairman, as provided in the adjournment of its August session, such taxpayer was not entitled to notice before the making of an assessment materially increasing the tentative valuation, in the absence of any claim that it did not know that the valuation fixed in August was tentative, that it requested notice before any change therein was made, or that any promise in respect to a further hearing was made, especially where it never requested in writing a hearing pursuant to section 95.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 603–606; Dec. Dig. § 363.*]

In Equity. Suit by the Idaho Railway, Light & Power Company and another against William Monk, as Treasurer and ex officio Tax Collector of Canyon County, Idaho, and another. Bill dismissed.

Cavanah, Blake & MacLane, of Boise, Idaho, for plaintiffs.

J. H. Peterson, Atty. Gen. of Idaho, J. J. Guheen, T. C. Coffin, and E. G. Davis, Asst. Attys. Gen. of Idaho, R. L. Givens, of Boise, Idaho, B. W. Henry, of Caldwell, Idaho, and C. E. Melvin, of Silver City, Idaho, for defendants.

DIETRICH, District Judge. This suit was brought by the Idaho Railway, Light & Power Company against the treasurer and the auditor of Canyon county to enjoin the collection of certain taxes levied against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its property. The cause is submitted upon the complaint and the answer and a brief stipulation of facts.

The property assessed is a hydro-electric power plant, together with transmission lines and distributing systems, by which the plaintiff furnishes electric current for lighting and power purposes in Ada, Canyon, and Owyhee counties, Idaho. The assessment was made by the state board of equalization, and it is objected, not that the property was exempt from taxation, or that the valuation is excessive, or that the board is without general authority or jurisdiction in the premises, but that its proceedings were so irregular as to render void that part of the valuation here called into question. Section 89 of the revenue laws of the state (Session Laws 1913, p. 200) provides that every corporation owning property of this character shall, on or before the second Monday of July of each year, furnish to the board a verified list and description thereof. By section 92 it is provided that the state board must assess all property subject to its jurisdiction at the meeting of the board "convening on the second Monday of August in each year, and must complete the assessment of such property on the fourth Monday of August in that year." In section 93 it is provided that the board may, for the purpose of securing information, require the attendance of the owner of property, or of any officer or manager or agent of such owner, and require him to answer under oath all questions propounded to him. Section 95 provides that:

"Every person whose property is to be assessed by the state board of equalization shall, upon request therefor, in writing, be entitled to a hearing before the said board in relation to his assessment or the assessment of other property in the state, and the said board shall, upon any such request, fix a time for such hearing within the period within which such assessment must be made, and such hearing shall be conducted in such manner as the said board may direct."

By section 96 it is directed that on or before the first Monday of September in each year the state auditor, as secretary of the board, shall prepare and transmit certified statements of the assessment of property by the board to the auditors of the several counties of the state.

The assessment complained of was made for the year 1913, and it appears that while the board was in session on August 18, 1913, a representative of the plaintiff company appeared, presented data, and made an argument with reference to the valuation to be placed upon its properties. Apparently this hearing was informal, for no request in writing was ever made by the plaintiff, as provided in section 95, and no hearing was ever ordered. Upon August 25th, the board being still in regular session, a tentative or conditional valuation of several properties, including that of the plaintiff, was adopted, as appears from the following entry in the minutes of the board:

"It was found upon investigation that reports on this class of property in many cases were incomplete and unsatisfactory, and for this reason are unsafe upon which to base an assessment; therefore, upon motion duly carried the following valuations were temporarily set, and by same motion, the said valuations were referred to the state tax commission for investigation, report, and recommendation as to valuation, property which had escaped, and any other recommendations and suggestions said commission might see fit to make, to the end that said property might be equitably taxed, the said

temporary and tentative valuations to be filed in abeyance, and not definitely and finally fixed or acted upon until said report from said tax commission had been filed and acted upon by the state board of equalization, the board having practically no data or information upon which to base a true assessment."

Appended to the entry was a detailed schedule of the valuations. Why the board adopted this tentative valuation is left to conjecture, and, upon the whole, seems quite inexplicable. Again, for some reason which apparently no one is able to explain, these assessments, although expressly stated to be tentative, and ordered "to be filed in abeyance and not definitely and finally fixed or acted upon," were promptly certified to the auditors of the several counties in which the properties are situate. Upon receipt of the certificates, these officers entered the valuations upon the tax rolls of the county, without any notations that they were tentative only. On November 22d, two days before the time when taxes became due and payable under the law, the state auditor telegraphed the county officers not to issue official receipts upon the valuations theretofore certified, and on December 4th the board of equalization again met, pursuant to the call of the chairman, as provided in the adjournment of August 25th. No notice of this meeting was given to the plaintiff; and, in so far as appears, it had no knowledge thereof, and was unrepresented. At this meeting, after considering the report of the state tax commission, the board entered an order very materially increasing the tentative valuations of August 25th, and thereupon the state auditor certified them to the several counties, with directions to the proper officers to enter the new valuations upon their assessment books, and to charge and collect taxes upon the basis thereof.

It is of the increase in valuation made at this meeting that the plaintiff complains. In due time it tendered to the defendant county officers, and they received, without giving a receipt in full, the entire amount of taxes due upon the valuation of August 25th; its contention being that the excess valuation of December 4th was without jurisdiction, and therefore void, because (1) the board was without power to act after the fourth Monday of August; and (2) assuming that its power did not cease upon that date, still it could not thereafter act without notice to the plaintiff.

[1] As to the first proposition, it is thought that section 92, prescribing the period for making assessments, is not mandatory, but directory only. There is no language which, either in terms or by fair implication, prohibits the board from performing the primary duty imposed upon it after the fourth Monday of August, and upon the whole I entertain no doubt that the provision relied upon in section 92 was intended for the benefit of the public, and not for the protection of the taxpayer, and therefore falls within the general rule that provisions in revenue laws, fixing the time within which duties are to be performed, are directory only. Cooley on Taxation (3d Ed.) p. 487; French v. Edwards, 13 Wall. 506, 20 L. Ed. 702; State Auditor v. Jackson County, 65 Ala. 142, 150; Buswell v. Supervisors, 116 Cal. 351, 48 Pac. 226; Sweet v. Boyd, 6 Okl. 699, 52 Pac. 939; Anderson v. City of Mayfield, 93 Ky. 230, 19 S. W. 598; Hart v. Plum, 14 Cal. 148.

I have examined the several decisions cited by counsel in support of a contrary view, but they all involve statutory provisions differing to some degree from the law of this state. Take the case of Stone v. Sessions, for instance, reported in 100 Mich. at page 343, 58 N. W. at page 1014. The gist of the decision is correctly stated in the head-note, which is as follows:

"Under a city charter providing that the board of review shall not increase an assessment after the first five days of its session, the doubling of an assessment after seven days renders it void."

Here are express negative words, denying authority after the lapse of a certain prescribed period. Not quite so explicit, but of like import, is the statutory prohibition involved in Napa Savings Bank v. Napa County, 17 Cal. App. 545, 120 Pac. 449. The other cases, while perhaps not so obviously distinguishable, furnish the plaintiff but little support. It may be added that, this being a question of assessment, and not of equalization, section 79 of the revenue law tends to confirm rather than to militate against the view which we have adopted. It provides that:

"The state board of equalization may meet at any time or place designated by the chairman for the purpose of promulgating rules or considering any matters in relation to assessment and taxation, but no assessment shall be equalized except at the meetings prescribed for that purpose" in the act.

[2] Nor do I think the second proposition tenable. It is conceded that actual notice to the plaintiff of the meeting of the board held during the period prescribed by law was not required, the statute itself giving constructive notice to all the world. It is further conceded that if the adjournment of August 25th had been to a day certain no notice of the adjourned meeting would have been necessary. But the argument is that, upon the passing of the fourth Monday of August, and with the indefinite adjournment of the board, no valuation could thereafter be put upon a taxpayer's property without first giving him actual notice and an opportunity to be heard.

The case relied upon with considerable confidence at the argument, and the only one directly in point to which my attention has been called, is that of Mercantile Bank of Cleveland v. Hubbard, County Treasurer, decided by the Circuit Court of Appeals of the Sixth Circuit, reported in 105 Fed. at page 809, 45 C. C. A. at page 66. The case arose in Ohio, and the facts are closely analogous to those of record here. While the statute of Ohio required notice to the taxpayer, the court took occasion to express the opinion that, without the statutory requirement, "such action could not be taken as would affect a citizen's property rights by increasing the value of his property for taxation without giving him an opportunity to be heard." It is to be noted, however, that this case, under a different title, was taken to the Supreme Court of the United States for review, where the decision of the Circuit Court of Appeals was reversed upon this very point. Lander v. Mercantile Bank, 186 U. S. 458, 469, 22 Sup. Ct. 908, 913 (46 L. Ed. 1247). After referring to certain of its earlier decisions, the Supreme Court, speaking through Mr. Justice McKenna, said:

"We do not think the principle of those cases is affected by an adjournment of the Ohio board without fixing a date of meeting. How were the rights of the bank affected and to what inconvenience was it put? It did not appear at the first meeting of the board. It rested on the evidence it had returned to the auditor, and it knew that the report it had made to the comptroller of the state would be before the board, and it knew also the duties and power of the board. The board was a public tribunal, open to be invoked, and charged with duties, and necessarily subject to adjournments. What it had done the bank could easily have ascertained, and as easily what it contemplated doing. An inquiry would have ascertained both. By the exertion of a very trifling trouble the bank would have been informed of every meeting of the board."

Observations of like character are applicable to the present case. The plaintiff, doubtless acting upon the general notice provided by the statute, appeared before the board at its regular meeting, furnished data, and by way of argument presumably presented such considerations as it had to offer upon the question of the proper valuation to be placed upon its property. It was thus given a hearing, although it had made no formal statutory request therefor. It did not have the right to be present, as in case of a trial in a court of law, during the entire time the board had under investigation and consideration the valuation to be placed upon its property. It had the opportunity and was accorded the privilege of making its showing both upon the facts and the law, and of these it availed itself. What more had it the right to ask? It must have known that the valuation of August 25th was tentative and subject to change. It does not charge that it was misled or deceived. It is not alleged that it requested to be advised before any change in the tentative valuation was made by the board, or that any promise in respect to a further hearing was made or broken. Besides, it is to be noted that only property owners who make request in writing for a hearing are entitled to be heard, and, the plaintiff having failed to make such application, it cannot complain of the failure of the board to give it a further hearing.

Having taken this view of the only grounds upon which the plaintiff contends the enforcement of the tax should be restrained, it is unnecessary to consider the several objections raised by the defendants to the sufficiency of the bill and of the showing therein made, to warrant equitable relief. Accordingly the bill will be dismissed.