CHARLES RICARDO, et al., Plaintiffs

v.

DANIEL W. AMBROSE, Government Secretary, Defendant

No. 11101

United States Court of Appeals

Third Circuit

Argued at Charlotte Amalie, Virgin Islands

January 27, 1954

Decided March 19, 1954

*See, also, 211 F.2d 212*

GEORGE H. T. DUDLEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for appelants*

CYRIL MICHAEL, District Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellees*

Before MARIS, MAGRUDER and WOODBURY, *Circuit Judges*

MARIS, *Circuit Judge*

This appeal from the judgment of the District Court of the Virgin Islands raises the question of the validity of the assessment in the year 1952 of taxes upon real property in the Municipality of St. Thomas and St. John for the calendar year 1951. The plaintiffs who are owners of real property in the municipality sought a declaratory judgment that the assessment of the taxes in question was invalid and an injunction restraining their collection. The district court found the assessment of the taxes to be valid and denied the injunction. D.C. (2 V.I. 266), 110 F.Supp. 716. Four of the plaintiffs thereupon brought the case to this court by appeal.

The principal contention of the plaintiffs is that the assessment here under attack is invalid because it was an assessment for the calendar year 1951 which was made in the year 1952 retroactively without authority in the law or regulations. To evaluate this contention properly we must consider the historical background of assessment procedure in the Islands.

The earlier Danish laws providing for the assessment of taxes upon real estate[1] were repealed in the Municipality of St. Thomas and St. John by the ordinance of the Colonial Council of St. Thomas and St. John approved February 25, 1922[2] which provided a new and comprehensive pro-

[1] Ordinances of October 1, 1802 and November 26, 1854 imposing the ground and building tax and Resolution of the Ministry of Finances of October 24, 1849 and Ordinance of February 22, 1855 imposing the house tax.

[2] Laws of the Virgin Islands of the United States, Municipality of Saint Thomas and Saint John from March 31, 1917 to December 31, 1924, pp. 79-105.

cedure for the assessment and collection of all taxes upon real property in the municipality. By its express terms this ordinance was applicable to the assessment and collection of taxes for the calendar year 1922.[3] Also by its express terms the taxes imposed by the ordinance were payable on or before June 30, 1923 for the calendar year 1922 and annually on or before June 30th of each year thereafter for the preceding calendar year.[4] Section 22 of the ordinance provided that the assessment of property "as the same appears on the tax-roll last prepared, shall, after it has been corrected, amended and revised" as provided for in the ordinance "constitute the assessment roll for the next calendar year". Section 22 further provided that "as soon after January fifteenth of each year, as is possible, it shall be the duty of the assessor of each assessment district to fill out an assessment schedule showing in detail each separate piece of real property and improvements thereon and in as great detail as is practicable all personal property subject to taxation within the Municipality belonging, on January fifteenth, to each taxable person whose property, in the opinion of the assessor, should be revalued or reassessed for purposes of taxation." Section 28 required the assessor to give notice to taxpayers of any changes made by him in assessments and Sections 34 and 35 provided for the revision of assessments by a Board of Review and Equalization upon complaint of any person aggrieved by the action of the assessor filed within fifteen days after notice of the assessment has been given to the aggrieved taxpayer.

The Ordinance of 1922 thus imposed a tax for the calendar year 1922 and directed that the assessment of taxable property should be on the basis of the last preceding tax assessment which was to be revalued and corrected by the

[3] § 1 of Ordinance of February 25, 1922.
[4] § 52 of Ordinance of February 25, 1922.

assessor commencing on January 15th and thereafter upon timely complaint revised by the Board of Review and Equalization. Since the Ordinance was not enacted until February 25th it is obvious that the assessment procedure for the taxable year 1922, which was required to begin January 15th, could not have been begun on that date prior to January 15, 1923. This would appear to have presented no difficulty, however, since the taxes for 1922 were not payable until June 30, 1923. The district attorney asserts as an historical fact, and there is no evidence to the contrary, that after the passage of the Ordinance of 1922 the assessments for each calendar year were made in the following year, commencing on January 15th, the tax being payable on June 30th of that year. It was in this setting that Congress enacted the Act of May 26, 1936 and that the President issued his regulations thereunder.

The system of taxation established by the ordinance of 1922 in St. Thomas and St. John proved to be unsatisfactory. Its separate classifications of cultivated land, pasture land and bush land penalized the cultivation of land and tended to keep it idle and in the hands of a few landowners. The tax rate of 1% did not provide adequate revenue for the municipality. Moreover in St. Croix the Danish tax laws still in force were equally unsatisfactory. Recommendations by the Governor to the Colonial Councils to enact improved tax laws brought no action. Accordingly Congress enacted the Act of May 26, 1936,[5] to correct this situation. Section 2 of the act provided that all taxes on real property in the Virgin Islands for the calendar year 1936 and all succeeding years should be computed on the basis of the actual value of such property and at the same rate whether such property was in cultivation and

[5] 49 Stat. 1372, 48 U.S.C. §§ 1401-1401e. See House Rep. No. 1559, 74th Cong. 1st Sess., and Senate Rep. No. 1973, 74th Cong. 2d Sess., 80 Cong. Rec. 6794-6796.

regardless of the use to which it was put.[6] Section 3 provided for a tax rate of 1.25% of the assessed value until local tax laws were enacted by the legislative authority of a municipality. The section further provided that if the legislative authority of a municipality failed to enact laws for the levy, assessment, collection or enforcement of any tax imposed under authority of the act within three months after its enactment the President should prescribe such regulations.[7]

The Colonial Council of the Municipality of St. Croix passed such an ordinance on August 26, 1936 which was approved September 5, 1936[8] but the Colonial Council of the Municipality of St. Thomas and St. John failed to do so. Accordingly the President of the United States, pursuant to section 3 of the Act of 1936, on December 31, 1936 issued regulations for the levy, assessment, collection and enforcement of an assessed valuation of real property tax, at the rate of one and one quarter per cent, in the Municipality of St. Thomas and St. John[9] (33 V.I.C. § 2301). These regulations are still in force in the municipality and it is under them that the assessment was made which is here under attack. The provisions of the regulation relevant to the present case are these:

"Section 4. The assessor shall upon actual view, list, value, assess and return all property subject to taxation in the Municipality as of Jan. 15, 1937, and each succeeding year thereafter. . . .

"Section 5. In computing the actual value of real property subject to taxation, the assessor shall take in consideration all of the following elements and incidents:
 (a) Location and surroundings;
 (b) Quality or fertility;
 (c) Condition of structures;

[6] 48 U.S.C. § 1401a.
[7] 48 U.S.C. § 1401b.
[8] House Document No. 67, 76th Cong., 1st Sess., pp. 22-38.
[9] House Document No. 67, 76th Cong., 1st Sess., pp. 184-196.

(d) Recent cost to the present owner;

(e) Recent sale price of adjacent property;

(f) Recent bona fide offer;.

(g) Accessibility;

(h) Proximity to public facilities, conveniences and utilities;

(i) Rental or income derived directly from the property.

\* \* \*

"Section 14. The assessment of property, as the same appears on the tax-roll last prepared, shall, after it has been corrected, amended and revised, as herein provided for, constitute the assessment roll for the next calendar year. As soon after January fifteenth of each year, and not later than March thirty-first, it shall be the duty of the assessor to fill out an assessment schedule showing in detail each separate piece of real property and improvements thereon, subject to taxation within the Municipality, belonging, on January fifteenth, to each taxable person whose property, in the opinion of the assessor, should be revalued or reassessed for purposes of taxation, or the revaluation of which has been requested by the owner thereof or by the Municipal authorities of the Municipality, or by any property owner. The assessment roll shall be open to public inspection at any time. . . .

\* \* \*

"Section 18. It shall be the duty of the assessor when he makes any changes in the existing assessment of property of a taxpayer or whenever he assesses the property of a taxpayer not previously assessed or whenever he makes any change in the list and assessment of property as returned by a taxpayer where such taxpayer has been called upon to fill in his schedule showing his property subject to taxation, to make out a written or printed notice of such action, which he shall serve upon said taxpayer by leaving a copy thereof with said taxpayer, or any member of his family or attendant of legal age, or with the person in charge of said property, or if it is not possible to make service in such way, by transmitting such copy by registered mail to such owner or person in charge of the property, and unless said person, or an authorized agent of said person, shall appeal from such assessment to the Board of Review, as hereinafter provided, such assessment shall be final and binding.

"Section 19. Whenever the Government Secretary shall learn

490

that any real property liable to taxation has been omitted from the assessment of property of any taxpayer for any year or years, beginning with the year nineteen hundred and thirty-six, he shall immediately cause the same to be assessed for the years for which said property has not been assessed and to add such property to the tax-rolls for such years and proceed to the collection of the taxes corresponding to the same and all surcharges accruing on account of such taxes not having been paid in due time, in the manner prescribed by these Regulations. Provided, however, that where such property has not been assessed and taxed through no wilful default of the owner the Government Secretary shall have power in his discretion, to remit the surcharge, in whole or in part.

\* \* \*

"Section 20. As fast as the assessment or revision of the assessment of property as herein provided is made, or at such intervals of time as may be fixed by the Government Secretary the Assessor shall promptly transmit the completed schedules to the Government Secretary who shall cause the same to be examined, arranged and delivered to the Board of Review.

\* \* \*

"Section 24. For the purpose of revising the assessment or reassessment of property, as provided by these regulations, and for the purpose of passing upon all claims made by taxpayers in respect to the assessment of their properties, there shall be a Board of Review, composed of the Government Secretary and four other persons, citizens of the Municipality not more than two of whom shall be employees of the Government, versed in matters pertaining to the value of property in the Municipality. Said four persons shall be appointed by the Governor by and with the advice and consent of the Municipal Council, on or before the first day of January, shall hold office for two years, and until their successors are appointed and qualified, and shall receive such compensation as may be fixed by Ordinance of the Municipal Council. Each of the members of the Board shall take an oath fairly and impartially to pass upon questions coming before them according to law, and any three of them shall constitute a quorum. The Government Secretary shall be ex-officio Chairman of said Board.[10]

[10]As amended by Ordinance of the Municipal Council of St. Thomas and St. John, enacted August 18, 1951 (3 V.I.C. § 35 note).

"Section 25. Any person aggrieved by the action of the Assessor in relation to the valuation of his property may make written complaint thereof to the Board of Review, which complaint shall consist of a specific statement of the particular errors complained of, with such facts as may lead to their correction; Provided, however, that no such complaint or claim shall be considered by said Board unless it is presented within fifteen days after the aggrieved taxpayer has been notified by the assessor, as herein provided, of the assessment or re-assessment of his property; Provided, also, that no statements or arguments in behalf of such complaint or appeal shall be considered except those presented by the aggrieved person himself or his duly accredited attorney or agent. The Board of Review shall hold such hearing during the month of April each year as may be necessary and shall notify the aggrieved person or his representative to appear at one of its hearings and shall hear the appeal and determine any questions arising before the Board which relate to the liability of the property to assessment, or to the amount thereof, and, upon regarding such determination, shall order the assessment books or schedules to be corrected in accordance with their decision. The Board shall have the power to lessen or increase the valuations made in any schedule returned to it whether any complaint has been made in relation thereto or not, and decide all complaints in respect to the assessment of taxes and to correct all errors; Provided, however, that no increase shall be made in the valuation of property of any person unless such person shall have been given at least fourteen days notice of the intention to make such increase, in the manner provided for in Section 18: The decision of the Board in all matters coming before it shall be final unless the taxpayer within thirty days after the receipt from the Board of the notice provided in Section 26 hereof petitions the District Court for a review of same. The District Court may modify, reverse or affirm the decision of the Board. A copy of the petition shall be served on the Chairman of the Board. In executing the duties imposed upon it by these Regulations, the Board may examine on oath or affirmation, any person or persons who may have knowledge of or information concerning property subject to taxation, and any member of the Board may administer the oath or affirmation.

\* \* \*

"Seciton 28. When the schedules containing the assessments

492

have been duly examined, verified, corrected and revised as hereinbefore provided, the Government Secretary shall cause the same or the tax-rolls corresponding thereto, to be securely filed with appropriate titles and indexes, if necessary. No file shall contain the schedules or tax-rolls of more than one district and when endorsed and signed by the Chairman of the Board of Review said schedules or tax-rolls shall constitute the assessment file of the district to which it relates, in accordance with which the tax provided by law shall be levied and collected. Provided, that the Chairman of the Board of Review shall endorse and sign upon each assessment file as corrected in accordance with the decision of said Board a statement to the effect that the same is the assessment file for the district to which it relates, and said assessment file shall, when so endorsed constitute the assessment of property for purposes of taxation for the year.

"Section 29. It shall be the duty of the Assessor in making the assessment to list each piece or parcel of real estate separately, and to give each its assessed value, together with a description of it, and the name and address of its owner, in so far as such information can be obtained. Where the real property embraces both land and improvements, the assessed value of the land and of the improvements shall be given separately. . . .

\* \* \*

"Section 35. The said taxes shall be due and payable on June thirtieth of each year. Such taxes shall become delinquent if not paid within sixty days after the date on which the same become due, and the Finance Officer shall collect upon all such delinquent taxes an additional sum of one half percent of the amount thereof for each month, or fraction thereof, for which said taxes are so delinquent."

Remembering that these regulations were designed to implement the Act of Congress which specifically stated that it was applicable to taxes on real property for the calendar year 1936 and all succeeding years it will be seen that procedurally they fit with exactness into the pattern of assessment procedure set by the Ordinance of 1922. Indeed the provisions of the Regulations of 1936 with respect to assessment procedure are in many respects identical with

the provisions of the Ordinance of 1922. Thus section 4 of the regulations expressly provides that the first assessment thereunder which necessarily under the mandate of the Act of 1936 must have been the assessment for the year 1936 should be begun by the assessor on January 15, 1937, while section 35 provides that the taxes shall be payable on June 30th of each year. As we have seen, it appears that under the Ordinance of 1922 assessments for each calendar year were made beginning on January 15th of the following year and the taxes were payable on or before June 30th of the year in which the assessment was made. Accordingly the assessment for 1935 must have been made on and after January 15, 1936 and the taxes for 1935 were not payable until June 30, 1936. The procedure under the Regulations of 1936 followed exactly the same pattern without overlapping or hiatus, the assessment for 1936 being made on and after January 15, 1937 and the taxes thereon being payable on June 30, 1937.[11] It would follow that the assessment for 1951 was required to be made on and after January 15, 1952 as the evidence shows that it was made.

The plaintiffs contend, however, that this construction of the regulations is not correct and that the language of section 14 of the regulations makes it clear that the assessment begun in January, 1952 was made for the year 1952 and not for 1951. They rely upon the opening sentence of section 14, as follows:

"The assessment of property, as the same appears on the tax-roll last prepared, shall, after it has been corrected, amended and revised, as herein provided for, constitute the assessment roll for the next calendar year."

This language, however, does not support the plaintiffs' contention but is wholly consistent with the construction

[11]The admission of facts made in the district court by the defendant at the request of the plaintiff makes it clear that this procedure was followed, the tax for 1936 being collected in 1937 at the 1¼% rate.

which we have placed upon the statute and regulations. For the "next calendar year" to which the sentence refers must necessarily be the year next following the year for which the "tax-roll last prepared" was made. Otherwise annual assessments would not result. Thus in the present case the next calendar year was 1951 since, although that year was past in 1952 when the assessment under attack was being made, it was nonetheless the next year after 1950, the year for which the tax-roll had been prepared which was then being "corrected, amended and revised." Therefore, the plaintiffs' contention that in the present case the "next calendar year" was 1952 cannot be accepted. Moreover the contention proves too much. For if by "next calendar year" is not meant the year which is next after the year for which the prior tax-roll was made but rather the next year in point of time after the assessment it would not be the year in which the assessment is being made but rather the year after that one. That would mean in the present case that the assessment made in 1952 was to be for the year 1953 and not for either 1952 or 1951. We are satisfied that such was not the legislative intention.

■ We conclude that the district court was right in holding that under the Regulations of 1936 the assessment here in question which was made in 1952 was made for the calendar year 1951. The plaintiffs argue that such a retro-active assessment procedure, even though provided for by the regulations, is not authorized by the Act of 1936 under which the regulations were issued. We do not agree with this contention. On the contrary, as we have seen, section 2 of the Act provides that all taxes on real property in the Virgin Islands shall be computed on the basis prescribed by the act beginning with the calendar year 1936. The Regulations of December 31, 1936 (33 V.I.C. § 2401 note et seq.) were issued by the President to implement the act, the Colonial Council of the Municipality of St. Thomas

and St. John having failed to do so. It is clear that Congress contemplated that the assessments for 1936 and subsequent years might well have to be made retroactively. For the act was not enacted until May 26, 1936, it allowed three months thereafter for local implementing legislation after which, if none was enacted, the President was given time to act in promulgating regulations. It was obvious that such regulations could not be issued early enough to allow time for the 1936 assessment to be completed in that year. Moreover the Act of 1936 was passed in the background of the Ordinance of 1922 under which, as we have seen, assessments had been retroactively made in the early part of each year for the preceding year. Congress certainly contemplated that either the local laws, if enacted, or the President's regulations might follow the same pattern.[12] Whether it would be wiser to provide for the valuation and assessment of real property during the year for which the tax is assessed is a political matter for the legislative authorities to decide and with which the courts have nothing to do. It is sufficient merely to say that Congress had power to authorize, as it did, the procedure which was prescribed by the regulations.

 The plaintiffs also asserted in the district court and urge here that the assessment which was made in 1952 was invalid because the requirements of sections 4, 14, 18, 25 and 28 of the regulations, above quoted, were not complied with by the assessing officials. In considering these contentions we must keep in mind the legal distinction between statutory provisions which are mandatory and those which are merely directory. For it is universally held that exact conformity with all the statutory procedure for as-

[12]The Act of 1936 was clearly not unconstitutional in thus authorizing a retroactive assessment. Kentucky Union Co. v. Commonwealth of Kentucky, 1911, 219 U.S. 140, 152, 31 S. Ct. 17, 55 L. Ed. 137; Milliken v. United States, 1931, 283 U.S. 15, 21, 51 S. Ct. 324, 75 L. Ed. 809; United States v. Hudson, 1937, 299 U.S. 498, 500, 57 S. Ct. 309, 81 L. Ed. 370; Welch v. Henry, 1938, 305 U.S. 134, 146, 59 S. Ct. 121, 83 L. Ed. 87; 51 Am. Jur., Taxation, § 661.

sessment is not necessarily a condition precedent to a valid tax. The test has been said to be whether the statutory requirement in question is intended for the protection of the rights of individual taxpayers or is merely for the orderly administration of public affairs.[13] Statutory provisions as to the time of assessment are generally held to be directory and delay in making assessments is not regarded as impairing the authority or duty of the assessing officials to make them[14] unless it appears that the delay has deprived the taxpayers of some right. Indeed Section 19 of the regulations here involved expressly authorizes the Government Secretary to cause omitted property to be subsequently assessed and added to the tax-rolls for the prior years in which it had not been assessed. We do not mean to suggest, however, that it is not the duty of the assessing officials to follow the directory provisions of the law and regulations[15] but merely to point out that their failure to do so does not invalidate the tax and thus prevent the municipality from receiving its needed revenues. Moreover the failure to observe mandatory requirements in the case of particular taxpayers, while giving them the right to attack their assessments on appeal, does not necessarily render the entire assessment roll invalid. Indeed mistakes of fact or errors in computation or judgment on the part of the assessor do not necessarily vitiate a tax, in the absence of an intentional disregard of the law, although they are, of course, correctible by the Board of Review on appeal.[16] To render the entire assessment invalid the failure to comply with the statutory requirements must ordinarily pervade the en-

[13]French v. Edwards, 1871, 13 Wall. 506, 80 U.S. 506, 511, 20 L. Ed. 702; 51 Am. Jur., Taxation, § 652.

[14]Illinois Cent. R. Co. v. Commonwealth of Kentucky, 1910, 218 U.S. 551, 558, 31 S. Ct. 95, 54 L. Ed. 1147; Idaho Ry., Light & Power Co. v. Monk, D.C. Idaho, 1914, 218 Fed. 682, 684; Appeal of Baldwin, 1943, 153 Pa. Super. 358, 33 A.2d 773.

[15]Section 3 of the Regulations of 1936 gives a right of action upon the bond of the Assessor to any person aggrieved or injured by his wilful neglect of duty.

[16]Boorman v. Juneau County, 1890, 76 Wis. 550, 45 N.W. 675; 51 Am. Jur., Taxation, § 654.

tire proceedings and prejudice the rights of every taxpayer.[17] It is true, of course, that due process requires that at some stage before the tax becomes irrevocably fixed as a charge on a taxpayer's property he must have an opportunity, of which he shall have notice, to be heard as to the validity of the tax, the taxability of his property and the amount of the assessment.[18] The regulations here involved fully afford this right of hearing, however, both before the Board of Review on complaint after notice of assessment and on appeal from the Board to the district court.

With these general principles in mind we turn to the specific complaints of the plaintiffs, remembering that every presumption is to be indulged in favor of the validity and correctness of the assessments and that the burden was on the plaintiffs to show affirmatively such noncompliance with the statutory requirements as would invalidate them.[19] Section 4 of the regulations provides that the assessor "shall upon actual view, list, value, assess and return all property subject to taxation in the Municipality". The plaintiffs contend that the assessor did not view all the properties assessed. It is quite doubtful whether this is a mandatory requirement in all cases, regardless of the assessor's prior knowledge of the property.[20] Assuming, however, that it is mandatory as to any property which the assessor proposes to revalue or reassess, its breach would certainly affect only those assessments made without view and not any of those as to which a proper view was made. Moreover under section 25 of the regulations the

[17]Ogden City v. Armstrong, 1897, 168 U.S. 224, 236, 18 S. Ct. 98, 42 L. Ed. 444.

[18]Hagar v. Reclamation Dist. No. 108, 1884, 111 U.S. 701, 710-711, 4 S. Ct. 663, 28 L. Ed. 569; Londoner v. City & County of Denver, 1908, 210 U.S. 373, 386, 28 S. Ct. 708, 52 L. Ed. 1103; Turner v. Wade, 1920, 254 U.S. 64, 67-68, 41 S. Ct. 27, 65 L. Ed. 134; 51 Am. Jur., Taxation, § 728.

[19]Brophy v. Commonwealth, 1922, 134 Va. 250, 261, 114 S.E. 782, 785; 51 Am. Jur., Taxation, § 655.

[20]Compare Peninsula Iron & Lumber Co. v. Crystal Falls Twp., 1886, 60 Mich. 510, 27 N.W. 666; Grant Land Ass'n v. People, 1904, 213 Ill. 256, 72 N.E. 804.

Board of Review on appeal is empowered to correct this as well as any other error. However this may be, the assessor's testimony is clear that she viewed all the properties the assessments of which she changed. The testimony of three property owners that they did not see the assessor inspect their properties does not impeach her testimony that she did so since she might have made the inspection in their absence or from an outside point affording a fair sight of the properties and their surroundings.[21] We accordingly find no merit in this contention.

 Two provisions of section 14 of the regulations are said to have been violated; one that the assessment schedules were not completed by the assessor by March 31, 1952, and the other that the assessment roll was not open to inspection at all times. As to the first there is direct and positive testimony by the assessor that she completed all the assessment schedules by March 31st and no testimony that she did not do so. It is true that the notices to taxpayers required by section 18 were not in all cases sent out by March 31st but this was not required by the regulations. In any event we are satisfied that the fixing of March 31st as the time for completing the assessor's work was directory rather than mandatory and that if the assessment schedules could not have been completed by that date the assessment would not have been invalidated thereby.

 We may assume as mandatory the requirement of section 14 that the "assessment roll shall be open to public inspection at any time." It is nonetheless clear that the assessment roll cannot be inspected before it is prepared. Under the express language of section 14 the assessment roll comprises the assessment schedules after they have been corrected, amended and revised by the designated officials. The provision for an absolute right of public inspection at all times obviously could not have been in-

[21]Hendricks v. Gilchrist, 1881, 76 Ind. 369, 371.

tended to apply to assessment schedules upon which the assessor, the Government Secretary or the Board of Review are actually at work. While interested taxpayers should be accorded a reasonable opportunity to see even these schedules their availability for inspection is necessarily limited by the needs of the assessing officials who are working on them. There was no evidence in this case that inspection of either the completed assessment roll or individual assessment schedules in process of correction, amendment or revision was denied to anyone.

 Section 18 of the regulations provides that the assessor shall give notice to taxpayers when he makes any changes in existing assessments. This is undoubtedly a mandatory requirement. The plaintiffs assert that the assessor made changes in certain assessments after these notices had been given. The testimony of the assessor is clear, however, that no such changes were in fact made and that the apparent changes to which the plaintiffs refer were merely the result of typographical errors in a few notices prepared for her by inexperienced clerks. Certainly there has been nothing shown in this regard which would invalidate the entire assessment.

 Section 25 of the regulations provides that the Board of Review "shall hold such hearing during the month of April each year as may be necessary". The plaintiffs point out that the Board did not complete its hearings in 1952 in the month of April. But we do not regard its failure to do so as fatal to the assessment. For we are satisfied that the requirement was intended to be merely directory.[22] As we have seen, notices of changes in assessments were given during the month of April to taxpayers who then had fifteen days after notice in which to appeal to the Board. It is obvious that since a large number of such ap-

[22]Younker Bros. v. Zirbel, 1943, 234 Iowa 269, 12 N.W.2d 219, 151 A.L.R. 242.

peals were taken[23] the Board might find itself unable to hear them all fully prior to May 1st. We do not think that the regulations intend thus to cut off the right of any taxpayer to a full hearing of his appeal by the Board. In this case it appears that the Board began its hearings on April 16, 1952 and held them regularly three times a week or oftener until all the appeals before it were heard and decided, its last decisions being given on June 6, 1952. We regard this as a sufficient compliance with the regulations. It is true that the appeals might be so numerous as to make it impossible for the Board to hear and decide them all before June 30th and thus delay the completion of the tax-rolls until after the date fixed by the regulations for the payment of the tax. But in such a situation the Government Secretary in the exercise of the discretion conferred upon him by section 19 of the regulations would undoubtedly remit for a reasonable time after the completion of the tax-roll any surcharge which might otherwise be payable by taxpayers under section 35.

▮ Finally the plaintiffs complain that the provisions of section 28 of the regulations were not complied with which require the Government Secretary, after the assessment schedules have been examined, verified, corrected and revised by the Board of Review, to secure them in files by assessment districts and then to endorse and sign the files as chairman of the Board of Review. The evidence, however, is uncontradicted that these requirements were complied with. True, the assessment districts which were employed corresponded to the three electoral districts of the municipality[24] whereas the plaintiffs contend that the assessment districts should have corresponded to the much larger number of quarters into which the municipality is divided. Neither the law nor the regulations establish the

[23]160 appeals were taken to the Board of Review in 1952.
[24]The town district of St. Thomas (Charlotte Amalie), the country district of St. Thomas and the district of St. John.

assessment districts, however, but leave them to the determination of the assessing authorities. There is no reason to hold that their selection of the electoral districts for this purpose was invalid.

We conclude that the district court rightly held that the assessment made in 1952 for the year 1951 was not invalid as a whole on any of the grounds asserted by the plaintiffs. For individual injustice which they or any of them may have suffered in respect to their assessments they, of course, had their remedy by appeal to the Board of Review and from its decision to the district court under section 25 of the regulations with ultimate review de novo by this court. Since we think that the district court had jurisdiction to enter a declaratory judgment as to the general validity of the assessment of taxes for the year 1951 and since we are satisfied that the court rightly refused on the merits to enjoin the collection of such taxes we need not consider the defendant's contentions that the plaintiffs were not in any event entitled to equitable relief because they had an adequate remedy at law and because section 3653(a) of the Internal Revenue Code, 26 U.S.C. § 3653 (a), bans such relief.

The judgment of the district court will be affirmed.